Filed 8/29/24  P. v. Hill CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT HILL,<br><br>    Defendant and Appellant. | D082266<br><br><br><br>(Super. Ct. No. RIF2000020) |


APPEAL from a judgment of the Superior Court of Riverside County, Dale R. Wells, Judge.  Affirmed.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION

Jane Doe worked the "[g]raveyard shift" from 11:00 p.m. to 7:00 a.m. as a desk clerk at a Comfort Inn motel in Riverside County. She worked alone in the motel lobby. The lobby was closed to the public and the doors were locked from the beginning of her shift until 6:00 a.m. Guests who checked in during those hours did so through a "night window" between the interior and exterior of the motel. Doe assisted guests who checked in through the window. She also acted as the "night auditor."

In the early morning of December 30, 2019, shortly before 3:00 a.m., Doe began counting the cash receipts for the day. She was seated at a counter in the lobby using a table that could be seen by outsiders through the motel's windows. The money she was counting was displayed on the table.

Robert Hill walked by in front of the windows and said something to Doe. He could see the money on the table. Hill was angry at Doe. She had called security earlier that evening because she saw him walking around the motel's property. Security sprayed Hill with mace or pepper-spray to get him to leave. Hill was also high on methamphetamine and feeling like a "boss."

Doe told Hill to go away. A few minutes later, she heard what sounded like Hill trying to break down the door to a back office used by the manager during the day. Doe called security again and continued counting the money.

Hill returned to the front of the building where the lobby was located. Suddenly, he threw a big rock through one of the lobby windows. Doe started screaming as Hill climbed through the broken window into the lobby. She ran down a hallway behind the check-in counter toward the back office. Hill jumped over the counter and chased after her. Doe closed the door to the back office and tried to lock it, but "the door came opened because the lock was broken." Hill charged in through the unlocked door and attacked her.

2

Hill "grabbed ahold of [Doe] and threw [her] down on the ground and tried to take [her] clothes off." Doe landed on her back. Hill grabbed her pants and underwear and tried to take them off. Doe grabbed her clothes and tried to keep them on—in a "kind of a tug of war." Hill told Doe to stop screaming, but she kept screaming.

Hill suddenly froze and looked at Doe. He asked her, "Where is the money?" The money was "in plain view" on Doe's desk in the lobby, but Hill ran off without taking it. Doe called 911.

Hill was found and detained in an alleyway behind a large shopping complex a block and a half from the motel. He was charged with burglary (Pen. Code,[1] § 459), assault to commit rape (§ 220, subd. (a)(1)), and other offenses. Relevant here, a jury convicted him of burglary, but hung on the assault to commit rape charge, convicting him of the lesser-included offense of simple assault (§ 240).

On appeal, Hill contends his conviction for burglary must be reversed because the prosecution was purportedly required to prove he was not guilty of shoplifting, as defined by section 459.5, but failed to do so. According to Hill, the prosecution was required to disprove he was a shoplifter by demonstrating he either (1) intended to steal more than $950, or (2) the lobby and back office were closed to the public. Hill also asserts the trial court erred when it failed to instruct the jury with these required elements of proof. We disagree and affirm.

Hill's arguments for reversal are based on the interplay between the two statutes that define the crimes of burglary and shoplifting. Section 459 defines "burglary" to be (1) the entry of a building, (2) with "intent to commit

_____

[1]     Further undesignated statutory references are to the Penal Code.

grand or petit larceny or any felony." (§ 459.) Section 459.5 defines the crime of "shoplifting" to be (1) the entry of a "commercial establishment," (2) "with intent to commit larceny," (3) "while that establishment is open during regular business hours," (4) "where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." (§ 459.5, subd. (a).) These two offenses are uniquely related through the provisions of section 459.5, subdivision (b) (section 459.5(b)). A recent California Supreme Court decision, *People v. Lopez* (2020) 9 Cal.5th 254 (*Lopez*), which the parties do not address, explains in detail how the two statutes work together.

Section 459.5(b) provides "[a]ny act of shoplifting . . . *shall* be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property." (§ 459.5, subd. (b), italics added.) With this language, section 459.5(b) expressly prohibits prosecutors from charging a defendant with both shoplifting and burglary at the same time based on the same property, even in the alternative. (*Lopez, supra,* 9 Cal.5th at pp. 268, 274.) The effect is to carve out from burglary the relatively new offense of shoplifting. (*People v. Colbert* (2019) 6 Cal.5th 596, 602 (*Colbert*).) Thus, conduct that might otherwise be burglary is shoplifting instead if the defendant enters a commercial establishment that "is open during regular business hours and the property taken or intended to be taken is worth $950 or less, but, '[a]ny *other* entry into a commercial establishment with intent to commit larceny' continues to be second degree burglary." (*Lopez,* at p. 265 [quoting § 459.5, subd. (a)].)

As explained by our high court, the prohibition of alternate charges by section 459.5(b) limits the People's charging discretion in several ways. Essential here, the precise nature of the limitations on the People's discretion

4

*depends upon the state of the evidence during the proceedings.* (*Lopez, supra,* 9 Cal.5th at pp. 268, 274, 276–277.)

"[A]s a general rule, section 459.5(b) prohibits a prosecutor from charging burglary . . . instead of shoplifting when there is *probable cause* that a defendant has committed shoplifting of the same property." (*Lopez, supra,* 9 Cal.5th at p. 274, italics added.) This is because section 459.5(b) provides "[a]ny act of shoplifting . . . *shall* be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property." (§ 459.5, subd. (b), italics added.)

This general rule, however, is subject to "a few narrow exceptions." (*Lopez, supra,* 9 Cal.5th at p. 276.) Two are relevant here. First, "where there is probable cause to support charges of shoplifting *and* second degree burglary . . . , a prosecutor may charge the wobblers of second degree burglary or grand theft instead of shoplifting under a theory supported by the evidence that the property in question is worth more than $950. But in order to return a guilty verdict on either of these charges, the jury must *actually find* the property to be worth more than $950." (*Id.* at pp. 276–277 [cleaned up].) Second, "where there is probable cause to support charges of shoplifting and second degree burglary, a prosecutor may charge second degree burglary instead of shoplifting under a theory supported by the evidence that the defendant did not enter a commercial establishment open during regular business hours. But in order to return a guilty verdict on the burglary charge, the jury must *actually find* that the structure defendant entered was not a commercial establishment or that the defendant entered the commercial establishment outside of its regular business hours." (*Id.* at p. 277.) "In these cases, the jury's determination that the defendant

5

committed second degree burglary or grand theft effectively doubles as a determination that the defendant did *not* commit shoplifting." (*Ibid.*)

To summarize, in cases where there has been a theft from a commercial establishment, the People's charging discretion depends on whether the evidence supports probable cause to believe the defendant has potentially committed either a shoplift, a burglary, or both a shoplift and a burglary. Only when the evidence is ambiguous as to whether the defendant committed a shoplift or a burglary are the People required to disprove an element of the offense of shoplifting in order to obtain a valid burglary conviction. In such cases, *and only in such cases*, the People must prove either the defendant entered the commercial establishment when it was not open during its regular business hours or the property in question was worth more than $950. (*Lopez, supra*, 9 Cal.5th at pp. 268, 274, 276–277.)

As noted, Hill contends the prosecution was required to make these additional showings here and failed to do so. We disagree. This is not a case where there was probable cause to support a shoplifting charge alone or probable cause to support both shoplifting and burglary charges. (*Lopez, supra,* 9 Cal.5th at pp. 276–277.) The record here supported a burglary charge only. This is because the record is devoid of evidence the motel lobby was open to the public when Hill entered shortly before 3:00 a.m. The record is not ambiguous on this point.

"[E]ntering an interior room that is objectively identifiable as off-limits to the public with intent to steal therefrom is not punishable as shoplifting under section 459.5, but instead remains punishable as burglary." (*Colbert, supra,* 6 Cal.5th at p. 608.) Here, the doors to the motel lobby were locked when Doe started her shift at 11:00 p.m. They were scheduled to remain locked until 6:00 a.m. Customers who wanted to check in after the lobby

6

doors were locked had to do so through the night window. Indeed, Doe specifically testified the lobby was not open to the public, and Hill had to *break a window* to get in.

In the face of this evidence, Hill nevertheless contends that, even if the lobby was closed to the public, the prosecution failed to meet its burden because it failed to prove the back office was not open to the public. This argument has no merit.

The back office was *not* open to the public during Doe's shift. The outside door to the office was locked; Doe heard Hill unsuccessfully try and break down the door. And again, Hill had to *break a window* in the lobby before he could enter the motel and proceed toward the back office.

The events that transpired in the back office, moreover, were not ambiguous as to whether what transpired there was potentially a shoplift. The back office is not where Hill was alleged to have entered with intent to commit larceny. The money was in the lobby, and Hill's own testimony was that one of his thoughts when he entered the lobby was "I had to go get the money."

By contrast, the evidence was that Hill chased Doe to the back office to commit a terrifying assault, not a theft. Hill testified he was no longer "looking for the money" when he entered the back room. His focus "switched from the money to [Jane Doe]." We have reviewed the testimony cited by the parties and the surveillance video transmitted by the Attorney General. There is no evidence, circumstantial or otherwise, to contradict Hill's testimony about his intent when he entered the back office, much less probable cause that he entered the back office for any reason other than to commit an assault.

On this record, burglary was the only offense supported by the evidence. Hill's claim the evidence was insufficient to disprove he was a shoplifter fails because the prosecution was not required to make this showing. (*Lopez, supra,* 9 Cal.5th at pp. 276–277.)

Finally, Hill initially contends in his opening brief that the trial court committed instructional error when it failed to give "an expanded burglary instruction that included the shoplifting elements." In his reply brief, Hill acknowledges this argument is "untenable." Here, we agree with Hill. At trial, Hill's counsel asked "as a matter of trial strategy and tactics" that the jury not be instructed with the additional elements. A trial court is not required to instruct jurors on a defense that is inconsistent with the defendant's theory of the case. (*People v. Jennings* (2019) 42 Cal.App.5th 664, 672.) We therefore accept Hill's concession. But even if he had not conceded this claim, we would find no error for the same reason we rejected his insubstantial evidence claim. The evidence did not support instructing the jury that the People were required to disprove an element of the offense of shoplifting.

## DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:

DATO, Acting P. J.

BUCHANAN, J.